# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BEAU MICHAEL ROSE,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 20-cv-4062-CJW<br><br>**REPORT AND RECOMMENDATION** |

_____

Beau Michael Rose ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 21) and only summarize the pertinent facts here. Claimant was born in 1980. (AR[1] at 20.) He has at least a high school education. (*Id*.). Claimant allegedly became disabled due to traumatic brain injury, chronic neuritis or labyrinthitis, chronic vertigo, chronic migraines, and balance disorder. (*Id*. at 76.) Claimant's onset of disability date is July 3, 2016. (*Id*. at 12.) On October 11, 2019, Claimant filed his application for DIB. (*Id*

---

[1] "AR" cites refer to pages in the Administrative Record.
1

at 60). His claim was denied originally on February 3, 2020 (*id*. at 60, 62-72), and was denied on reconsideration on March 5, 2020. (*Id*. at 73, 75-86.) A teleconference hearing was held on July 13, 2020, with Claimant and his attorney Wil L. Forker and Administrative Law Judge ("ALJ") Matthew Bring. (*Id*. at 25-59.) Vocational Expert ("VE") Holly Neal also appeared at the hearing. (*Id*.) Claimant and the VE both testified. (*Id.* at 30-59.) The ALJ issued an unfavorable decision on August 4, 2020. (*Id*. at 12-21.)

Claimant requested review and the Appeals Council denied review on November 6, 2020. (*Id*. at 1-4.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On December 30, 2020, Claimant timely filed his Complaint in this Court. (Doc. 1.) On, February 23, 2022, all briefing was completed, and the Honorable C.J. Williams referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id*. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id*. An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

3

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

4

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.  *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant meets the insured status requirements through September 30, 2022. (AR at 14.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of July 3, 2016. (*Id*.) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: degenerative disc disease of the lumbar spine, left vestibular balance disorder, a seizure disorder, and migraines. (*Id*.) The ALJ also considered the effects of Claimant's traumatic brain injury, posttraumatic stress syndrome, and depression but found that these impairments did not cause any significant functional deficits and thus, were nonsevere. (*Id*. at 15). At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id*. at 16.) The ALJ evaluated Claimant's claims under listing 1.04 (disorders of the spine), 11.02 (epilepsy), and 11.03 (non-convulsive epilepsy). (*Id*.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) within the following parameters: the [C]laimant can never climb ladders, ropes or scaffolds; occasionally climb stairs or ramps; occasionally balance, stoop, kneel, crouch and crawl; never drive a motor vehicle as part of his job duties; never work around hazards (such as dangerous moving machinery and unprotected heights); and can work in an environment with no more than a moderate noise level (as defined in the SCO).

5

(*Id.*) Also at the fourth step, the ALJ determined that Claimant is capable of performing his past relevant work as a data entry clerk. (*Id.* at 19.) Additionally, the ALJ made an alternative step five determination, finding that "other jobs exist in significant numbers in the national economy that the [C]laimant also can perform, considering the [C]laimant's age, education, work experience, and residual functional capacity." (*Id.* at 20). Based on the VE's testimony, the ALJ found, in the alternative, that Claimant could find other work as a housekeeping cleaner and cafeteria attendant. (*Id.* 20-21). Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 21.)

## B. The Substantial Evidence Standard

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) rejecting Claimant's subjective allegations of disability; (B) rejecting the opinions of Dr. Jensen, a treating source; and (C) making a flawed RFC determination and improperly relying on an incomplete hypothetical question to the VE. (Doc. 22.)

A. *Whether the ALJ Properly Evaluated Claimant's Subjective Allegations*

   1. *Parties' Arguments*

While the argument is not entirely clear, Claimant essentially argues that the ALJ's credibility determination is flawed because the ALJ relied too heavily on Claimant's activities of daily living in discrediting his subjective allegations of disability. (Doc. 22 at 4-6.) In passing, Claimant also argues that the ALJ failed to properly consider the

7

medical evidence in making his credibility determination, in particular Claimant's migraines and dizziness. (*Id.* at 4.) Later in his brief, Claimant asserts that the ALJ "did not fully analyze all of the *Polaski* factors and took a few isolated instances when [Claimant] was able to perform work around the house elevating his ability to do work full time, light work, which is totally inconsistent with [Claimant's] overall medical condition." (*Id.* at 9.) The Commissioner argues that, in making his credibility determination, the ALJ properly considered Claimant's ability to perform daily activities. (Doc. 25 at 6-8.) More generally, the Commissioner argues that the ALJ properly evaluated Claimant's subjective allegations of disability under the *Polaski* factors. (*Id.* at 11-14.)

### 2. *Relevant Law*

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ,

however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### 3. *Analysis*

The record does not support Claimant's argument that the ALJ failed to provide good reasons for discounting Claimant's subjective complaints. The ALJ articulated his reasons for discounting Claimant's allegations at length considering the hearing testimony, Claimant's medical records and doctors' medical opinions. (AR at 16-19.)

The ALJ found that the "medical evidence of record does not fully corroborate the [C]laimant's allegations of disabling impairments." (*Id.* at 17.) The ALJ thoroughly considered the intensity and severity of Claimant's symptoms in his discussion of Claimant's RFC. (*Id.* at 16-19.) In doing so the ALJ addressed the relevant *Polaski* factors and considered: (1) the Claimant's daily activities (*Id.* at 18); (2) the duration, frequency, and intensity of the condition (*id.* at 16-19); (3) the use of medication (*id.* at 17); (4) precipitating and aggravating factors (*id.* at 18); and (5) functional restrictions (*id.* at 19). *See Wildman*, 596 F.3d at 968.

9

Case 5:20-cv-04062-CJW-MAR    Document 28    Filed 08/12/22    Page 9 of 18

With regard to Claimant's argument that the ALJ did not consider the medical evidence concerning his migraines or dizziness, Claimant is wrong. The ALJ specifically addressed Claimant's migraines as follows:

> The objective medical evidence indicates limited abnormal findings combined with conservative treatment modalities. Treatment notes dated October 2019 from Center for Neurosciences Ortho & Spine (CNOS) document the [C]laimant was evaluated by neurologist Dr. Jon M. Grudem, MD, for chronic migraines. Dr. Grudem noted the [C]laimant has not been on prophylactic medication for an extended period of time, was prescribed Topamax, but never took the medication. (Exhibit B2F/5). Dr. Grudem advised the [C]laimant to stop taking Sumatriptan, Aleve, and caffeine, and start a trial low dose of Elavil with a CGRP inhibitor or Botox injections to follow if Elavil was not successful. Dr. Grudem also noted the [C]laimant had untreated sleep apnea, and advised the [C]laimant that if [sic] would be difficult to get his migraines under control unless his sleep apnea was treated. VA treatment records dated November 8, 2019, document the [C]laimant reported on a nurse telephone encounter that he did not want to continue to see CNOS and did not want to go through with the recommended plan of care. (Exhibit B3F/15). At the hearing [Claimant] asserted that he did not want to continue treatment with this provider because they wished to change his treatment regimen significantly and that he "didn't want to reinvent the wheel." However, his apparent reluctance to changing treatment protocols does not lend strong support to his allegations of debilitating and uncontrolled headaches.

(AR at 17.) With regard to Claimant's dizziness, as will be discussed more fully below, the ALJ limited Claimant to less than the full range of light work, limited Claimant to never climbing ladders, ropes, or scaffolds, limited Claimant to no driving as part of his work duties, and limited Claimant to never working around moving machinery and unprotected heights. (*Id.* at 19.) All of these limitations were based on the opinions of treating source Dr. Jensen who addressed Claimant's dizziness. (*Id.*) Thus, I find these arguments meritless.

Claimant also asserts that the ALJ erred in discrediting his subjective allegations of disability "based upon what he does do as a part of everyday living." (Doc. 22 at 4.) The ALJ found that Claimant's ability to help with cooking, shopping, light household chores, budgeting, and paying bills was inconsistent with Claimant's allegations of disabling physical impairments. (AR at 18.) The ALJ also noted that medical reports dated March 2017 through November 2017 documented Claimant engaging in light jogging on a treadmill, scraping and painting a house, standing on ladders, mowing the lawn, carrying sheetrock upstairs, remodeling a house, and working on his car. (*Id.*) The ALJ also found these activities inconsistent with Claimant's allegations of disability. (*Id.*) The ability to perform daily activities inconsistent with the claimant's alleged disability reflects negatively upon a claimant's credibility. *Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir. 2005) (citing *Johnson*, 240 F.3d at 1148). The ALJ properly used this inconsistency in his assessment of Claimant's credibility. Also, the ALJ properly considered Claimant's activities combined with his review of the medical evidence and medical opinions. Thus, I also find this assertion meritless.

In sum, I find that the ALJ appropriately discounted Claimant's subjective allegations of disability because the ALJ found inconsistencies in the evidence as a whole and considered the *Polaski* factors. *See Wildman*, 596 F.3d at 968-69. As such, I find the ALJ did not err in discounting Claimant's testimony or his allegations because substantial evidence as a whole supported the ALJ's credibility determination. It is not for this Court to reweigh evidence. Thus, I recommend the District Court affirm this part of the ALJ's decision.

## B.  *Whether the ALJ Properly Evaluated Dr. Jensen's Opinion*

### 1.  *Parties' Arguments*

Claimant argues that the ALJ's conclusion that Claimant is capable of performing his past relevant work as a data entry clerk is contradicted by Dr. Jensen's opinion that

Claimant "might find it difficult to concentrate at times doing things on the computer." (Doc. 22 at 8) (quoting AR at 581.) The Commissioner argues that Dr. Jensen's statement does not qualify as an opinion. (Doc. 25 at 10.) Further, the Commissioner asserts that, "[d]espite [Claimant's] assertions, the ALJ considered Dr. Jensen's statement, in conjunction with the record as a whole, and accommodated [Claimant's] dizziness in the RFC finding." (*Id*. at 10-11.)

### 2. *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

12

### 3. *Analysis*

On March 30, 2020, Dr. Jensen provided a treating source statement for Claimant in the form of a letter addressing Claimant's left vestibulopathy. In the statement, Dr. Jensen opined:

> [Claimant] has had issues with dizziness and balance for several years now. He's had a couple VNGs done which show a weakness in his left vestibular system. Last one was done June 2019 which showed a 52% weakness on his left side. . . . And from the previous VNGs, this is progressive. And with these current flareups, I think it probably shows that his weakness is getting worse in the left ear. I don't think this is a reversible process. And this will be a lifetime issue for him. I think there are issues with him working. And I would not trust him doing any manual type labor. And he might find it difficult to concentrate at times doing things on the computer. And I would not recommend him driving alone. And if this gets worse, consider not driving at all. . . .

(AR at 581.) The ALJ made the following summary and assessment of Dr. Jensen's opinion:

> [C]laimant is also diagnosed with left vestibulopathy. Vestibular testing performed in June 2019 demonstrated 52% vestibular weakness of the left ear, and no change compared to 2017 evaluation. (Exhibit B1F/3). In March 2020, Rick C. Jensen, MD, at Sanford Clinic Ear, Nose and Throat, completed a treating source statement. (Exhibit B7F). Dr. Jensen noted the [C]laimant has experienced dizziness and balance issues for several years. Dr. Jensen opined against the [C]lainamt performing manual type labor and driving alone. He also opined the [C]laimant could experience difficulty concentrating at times when doing things on the computer. (Exhibit B7F).

(*Id*. at 18.) In determining Claimant's RFC, the ALJ took into consideration Claimant's left vestibulopathy and limited Claimant "to less than the full range of light work. . . . [C]laimant can never climb ladders, ropes or scaffolds. . . . Secondary to left vestibulopathy, he can never drive a motor vehicle as part of his job duties. He can never

13

work around hazards, defined as dangerous moving machinery and unprotected heights." (*Id.* at 19.) The ALJ stated that Claimant's RFC is "supported by the objective medical evidence, including imagining studies, physical examinations, the opinions of the DDS consultants and Dr. Rick Jensen, as well as the [C]laimant's allegations and his hearing testimony." (*Id.*) Additionally, in finding that Claimant's mental impairments were nonsevere, the ALJ determined that Claimant had a mild limitation in concentrating, persisting, and maintaining pace due to Dr. Jensen's opinion that Claimant might have difficulty concentrating while doing things on a computer. (*Id.* at 15.)

Having reviewed the entire record, I find that the ALJ properly considered and weighed the opinion evidence provided by Dr. Jensen. It is evident from the ALJ's decision that he considered Dr. Jensen's opinions as they relate to Claimant's left vestibulopathy. Indeed, the ALJ limited Claimant to "less than the full range of light work," including limiting him from climbing ladders, ropes, or scaffolds and limiting him driving as a part of his work duties, working around moving machinery, and working at unprotected heights. (*Id.* at 19.) While the ALJ did not specifically address supportability and consistency as to Dr. Jensen's opinion, it is clear that the ALJ found Dr. Jensen's opinions supported and consistent with the record as a whole with regard to the limitations he placed on Claimant's ability to work.

It is also evident from the ALJ's decision that he considered Dr. Jensen's opinion regarding Claimant's ability to concentrate while using a computer. (*Id.* at 15.) Even though Claimant does not explicitly make an argument regarding the ALJ not addressing the supportability and consistency of Dr. Jensen's opinion that Claimant "could experience difficulty concentrating at times when doing things on the computer," it is apparent that Claimant's focus on this issue in his brief requires me to address the issue.

The ALJ's failure to specifically address the supportability and consistency of Dr. Jensen's opinion regarding Claimant's ability to concentrate while using a computer does

14

not necessitate remand.  First, nothing in Dr. Jensen's treatment notes addresses or supports his opinion that Claimant would have difficulty concentrating while working on a computer.  (AR at 269-94.)  Second, nothing from other medical sources and nonmedical sources in the record supports Dr. Jensen's opinion that Claimant would have difficulty concentrating while working on a computer.  Third, Claimant does not argue and points to no evidence in the record that this opinion is supported or consistent with the record as whole.  Fourth, any error in not addressing the supportability and consistency of this opinion is harmless.  *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'") (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).  Fifth, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Welsh*, 765 F.3d at 929).

Accordingly, for all the reasons stated above, I conclude that the ALJ properly evaluated Dr. Jensen's opinion and I recommend that the District Court affirm this part of the ALJ's decision.

## C.     *Whether the ALJ's RFC Assessment and Hypothetical Question are Complete*

### 1.     *Parties' Arguments*

Claimant argues that both the ALJ's RFC assessment and the hypothetical question provided to the VE at the administrative hearing are flawed.  (Doc. 22 at 10-12.)  Specifically, Claimant argues that the ALJ's RFC assessment and hypothetical question to the VE are incomplete because they do not properly account for all of Claimant's impairments and functional limitations.  (*Id*.)  Thus, Claimant contends that the ALJ's RFC assessment and hypothetical question are not supported by substantial evidence in

the record. (*Id.*) The Commissioner argues substantial evidence supports the ALJ's RFC and hypothetical question. (Doc. 25 at 14-15.)

### 2. *Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

An ALJ is only required to include in the hypothetical the impairments the ALJ found supported by the record. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.") (quotation omitted). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001).

### 3. *Analysis*

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for his complaints. (AR at 15-19.) In his decision, the ALJ stated that, "[w]eighing all the evidence, the undersigned finds the [C]laimant's

16

subjective complaints and the objective medical evidence do not warrant additional restrictions and limitations beyond those established in the above residual functional capacity." (*Id*. at 19.) The ALJ also found that "the above residual functional capacity assessment is supported by the objective medical evidence, including imaging studies, physical examinations, the opinions of DDS consultants and Dr. Rick Jensen, as well as the [C]laimant's allegations and his hearing testimony." (*Id*.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making his overall disability determination, including determining Claimant's RFC. (*Id*. at 17-18.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Accordingly, I find that Claimant's assertion that the ALJ's RFC assessment is flawed is without merit.

The hypothetical the ALJ posed to the VE did "set forth impairments supported by substantial evidence in the record and accepted as true." *See Goff*, at 421 F.3d at 794. The ALJ asked the VE to:

> assume a hypothetical individual of [C]laimant's age, education, past work experience. Exertionally able to do work at the, I'll say light level, . . . occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch, crawl, should avoid work around hazards such as unprotected heights, moving mechanical parts, should avoid operating a motor vehicle as part of the regular job duties, we'll say work in an environment with no more than a moderate noise level as defined by the SCO, no mental limitations.

(AR at 55-56.) It is clear that the ALJ's hypothetical question was based on the ALJ's RFC assessment, findings, and conclusions, which are supported by substantial evidence on the record as a whole. Therefore, I conclude that the ALJ's hypothetical question properly included only those impairments which were substantially supported by the record as a whole and captured the concrete consequences of Claimant's deficiencies. *See Goff*, 421 F.3d at 794; *Hunt,* 250 F.3d at 625. Therefore, I find that the ALJ's hypothetical question was sufficient.

Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 12th day of August, 2022.

*[signature]*

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa